Morning, Your Honors. I'm James Nielsen for the appellant Cybernet. I'd like to reserve five minutes for rebuttal, if I may. Yes. After all the briefing, Your Honors, the issue on this appeal appears fairly narrow. It is whether the district court properly applied a State Fund exclusion for injuries intentionally caused to eliminate a duty to defend under an employer's liability portion of a workers' compensation policy. We contend the district court erred in two ways. First, although the exclusion applies to injuries intentionally caused, the district court applied the exclusion to allegations of intentional conduct, irrespective of whether the conduct was intended to cause injury. Since the days of Gray v. Zurich, over 50 years ago now, the California courts have steadily refused to enforce intentional injury exclusions to preclude duties to defend in cases where the insurance company cannot establish conclusively that the defendant insured intended to cause injuries. In fact, the cases in which duties to defend are denied under such clauses tend to be cases in which the very elements of the cause of action against the insured requires proof of intentional injury in order to establish liability against the insured. Kagan. But what is the meaning of intentional? Let's assume you're right up until that point. What is the meaning of intentional injury in this context? My understanding is that it's parallel to, is it Section 533? It's similar to 533, Your Honor, yes. It's exactly the same, or not. Is it exactly the same? It's functionally. There's some case law that says it's the same. I thought there was case law that says it's the same. That's what it means. There's case law that equates it. It's functionally the same. All right. And the 533 barrier to insurability, as I understand it, is – it says it's an intentional injury, but it includes some category of either inherently intentional injury or extreme likelihood of injury, doesn't it? In other words, it's not exactly intentional. No, actually, it is exactly intentional. What Your Honor is referring to – I thought there was A and a B. Well, what Your Honor is referring to, I think, is the doctrine from the J.C. Penney insurance case. Actually, I am looking at Ortega-Quarry, and it includes a category of knowledge that damages were highly probable or substantially certain to result or an act inherently harmful. Yes. The inherently harmful part is the part that comes from J.C. Penney. I'm sorry. I did not catch the reference. The first part to Ortega-Quarry, an act done with intent to injure, i.e., an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damages were highly probable or substantially certain to result. Exactly. That is correct. That would be a jury instruction to apply that particular exclusion. All right. So, therefore, you have to explain how these causes of action don't come within that conclusion, right? Sure. The nature of these causes of action, the theory we have posited here is that the by the doctrine of Firmino v. Fedco. That's the — should be in the bench memo, Your Honor. That's — that is one of our brief cases. I don't just read bench memos. I read briefs. And I read your brief quite carefully. Thank you. Go ahead. Very good, Your Honor. The Firmino case — the Firmino case is a California Supreme Court case that addressed situations like this, where employers have been sued by employees for conduct that occurred during the course of and rising in the course of employment, and where the employees were not precluded from proceeding against the employer by virtue of the workers' compensation exclusivity rule under California law. Okay. Fine. Now we're on to the next stage. What the Court said — what the Court said is that the exclusive remedy rule is subject to a common-law exception where the — where the injury suffered is outside the compensation bargain. The compensation bargain — I only understand that. That — that's the — the fourth exclusion. We're talking now about the fifth exclusion. Right. And the — well, this is key, Your Honor, because for purposes of getting to the sort of liability that we're talking about here under Firmino, it does not matter whether the employer intended to injure at all. In fact, I could refer the Court to a line from Firmino, which is 7Cal 4701. At page 718, the Court referred to the acts there, and they were acts of — I understand that there is a category that doesn't — that isn't included, but I want to know why these particular causes of action are in that category. Because of what the Court said here, Your Honor. It's not the — it has nothing to do with what the Court said. It has to do with what was alleged in the complaint. Well, what the — what was alleged in the complaint was a lot of things, Your Honor, including negligent supervision of employees. I mean, what the facts — the factual circumstances alleged in this complaint is that things went wrong during movie shoots. Okay. Things went beyond the expectations of the plaintiff employees who were actors, models. Do you think the negligence claims are outside the employment bargain and, therefore, outside Exclusion 4? Under Firmino, they are, Your Honor, because Firmino does — the Firmino exception does not turn on whether it's negligent or intentional. And the Court specifically says that. I understand that, but I want to know why these causes of action are not. I think that's what we're having — I'm having problems with trying to figure out how are these particular acts not under the compensation bargaining set of exclusions. Well, the acts — the acts may be — how they're outside the compensation bargain? Yes. Well, the district court found, and I would agree, that when — that when the employees alleged that they went into these movie shoots expecting a certain amount of control over what happened, that they were — that they had signed limit sheets, that they were told that they would be able to stop things at any given time, and they allege, although it's disputed, they allege that — that they were not permitted to do these things, that they became frightened, that things happened to them that they did not consent to, that they lost control, that they were coerced, and that violence was exerted upon them beyond their expectations. Well, so some of the — it would be helpful to go cause of action by cause of action and tell us which ones are — do you think any are in Exclusion 4? I don't think any of them are in Exclusion 4, Your Honor, and here's why. Exclusion 5 we're talking about. No, but you seem to be talking about Exclusion 4, because you're talking about Fermino. And Fermino is about — there are two dividing lines here, as I understand it. One of them between the kinds of claims that are covered by workers' comp, and therefore are within the exclusivity problem, which is Exclusion 4. And then you say there's a second dividing line, and that there is something within the — in that gap of — which are intentional acts or, for some other reason, beyond the employment contract or understanding, but are not — not an intentional — an intent to injure. So are we talking — are you — are you saying that all of the causes of action alleged in these three complaints are outside Exclusion 4 and outside Exclusion 5? Yes, Your Honor. Or just some of them? Pretty much all of them. I think there's a couple of them that would fall outside. All right. So why don't we go one by one and tell us why? As we go through these, Your Honor, I'm looking at excerpts of the record 192, which is the Cameron Adams complaint. It's the face page. It lists 11 causes of action. Negligence, negligence per se, intentional, fraudulent misrepresentation, and so forth. The ones that I think would probably be out would be civil conspiracy to commit intentional and fraudulent misrepresentation, perhaps intentional infliction of emotional distress, although I do not believe that's asserted against the employer. I think it's asserted against the individual defendants. So the reason I think that these all fall within it, and I have to clarify — Within what? Within which? Within which — Well, what I've been talking about with respect to Fermino, Your Honor, and I think we have some confusion here between you and me. We're talking about different things. We raised the issue of Fermino not to address Exclusion 4 at all. We raised Exclusion — we raised the Fermino doctrine to address Exclusion 5, which is what the district court ruled upon and what the Applee State Fund — Fermino just tells you what's outside the workers' comp scheme. It doesn't go to the next stage of what's — of the second exclusion. I think almost all of these can fall outside of the workers' compensation scheme. Fine. Okay. And I think — But you say you're not talking exclusion. I'm so confused. Just say what you want to say. My point is, Your Honor, that the — and I'm now — I've bumped into my — my rebuttal time. I apologize. Go ahead, please. The — my point is that the exposure that the insurer faces has to get by a workers' compensation exclusivity rule. In order to do that, in my view, they need to satisfy the Fermino test. The Fermino test for any of these causes of action, it can apply to negligence. It can apply to battery. It can apply to negligent hiring, emotional distress, those — those things. It can apply both to intentional conduct and to — and to the negligence claims. And I say this because the Court specifically says that intent to injure does not matter. It's not the motive behind the conduct that's at issue. It's the nature of the conduct and the employee's expectations that govern whether it's something that can be outside the workers' compensation exclusivity rule. So that's why we believe that they are, in fact — that is the potential liability that the insurer here faces. It is something that does not qualify under the test Your Honor set forth earlier that would be a jury instruction on — to apply an intentional injury exclusion. There is nothing inherently harmful in negligently supervising, for example, employees who went beyond what they were supposed to do in directing or staging video shoots, as in any movie. Well, several of the causes of action here specifically allege maliciousness and intent. Does that matter? Sure. And that's true — that's true in lots of lawsuits in which intentional injury exclusions are raised. They rarely, if ever — they rarely, if ever, turn on — they rarely, if ever, preclude a duty to defend. There's not been a case cited in which that has occurred merely because someone includes an allegation of malice. If you look to Gray v. Zurich itself, the defendant was sued for punching and beating up the plaintiff. The defendant said, I was just trying to defend myself. My potential liability is negligent use of excessive force in self-defense, which would be outside an intentional injury exclusion, according to California Supreme Court. This is no different than that situation where the mere fact that the plaintiff alleges that something bad happened, that there was bad intent, doesn't mean it's true and doesn't mean that the defendant can't face other forms of potential liability. We've laid out, I think, a fairly clear path as to how that would occur here. Your Honor, I'm almost out of time, so I think I'll reserve. Thank you. May it please the Court, good morning, Your Honors. My name is Jennifer Wellman. I'm here on behalf of State Compensation Insurance Fund, the appellee in this action. State Fund asks that you affirm the lower district court's ruling wherein it properly applied California's workers' compensation exclusivity rule, as well as the intentional act exclusion in the policy by applying a plain reading of the policy. I'd like to go ahead and just start off with responding to several... Excuse me, may I ask that you sit down, please? Thank you. I'm sorry? I see. Okay, go ahead. I'd like to go ahead and just kind of build on what's been discussed so far. You are absolutely right, Your Honor. Counsel and CyberNet, this entire litigation and in the underlying action, has a complete misunderstanding of California's workers' compensation law. Well, I'm not sure you don't also, because my understanding of your position is essentially that there is no gap, that anything that has — that there's nothing covered by Part 2 because the Exclusion 5 applies to any intentional act injury or whether there was an intentional injury or not. Is that your position? Yes, Your Honor. And that is... So what's left covered by Part 2? What is covered by Part 2? Right. So obviously, it's a case-by-case coverage analysis. There are statutory workers' compensation exceptions, and those are contained at Labor Code section 3602b3, Labor Code section 4558. Okay. And if there were allegations that did not allege intent, the State Fund does not disagree that there are certain allegations. Yes, but except that your position would be that that's covered by the workers' comp exclusion. That's not necessarily true. Give me an example. Of what? I'm sorry. Something that would be covered. So I just named a couple. No, you didn't name any. Under Labor Code section 3602b3, there's a product liability exception that's provided by statute. There's also... So what would be the — you're saying it's a product liability. So would it be a condom provided by the defendant, or how — is that what you're talking about? No. Under 3602b3, Your Honor, that exception provides that if the employer manufactures a certain product, puts it out into distribution. Well, we're talking about in the context of this case. In the context of this case, State Fund's position is that these allegations are not covered by Part 2. And that is because the allegations all fall within California's workers' compensation exclusivity rule, which does provide for intentional torts. California's — California's... You want everything in — including intentional torts, and he wants everything out, including negligent torts. That's not correct, Your Honor. In fact, actually, and that's what I'm hoping to clarify here, that counsel has misstated. The intentional act exclusion absolutely applies here. Under McAlean, all McAlean — McAlean actually interprets State Fund's policy. And it holds that all is — all that is needed is that an intentional act is committed. All that needed to happen was the employer needed to make the statement to his employee. He did not have to intend to injure her. He did not have to... But it's a little peculiar because it does say injury in the — in the exclusion. And because there's case law that says it's tantamount to the 533 exclusion from coverage, and that clearly involves injury. So where are you getting this from? Your Honor, the district court actually did say that it did not fall in the 533 exclusion because that required an additional scienter element that the employer have a preconceived design to inflict injury under Clemmer. And that is — that is what the district court said. The district court said it can still fall within the plain reading of the statute as an injury that was intentionally caused or aggravated by the employer. But what I just read you from — I read him from Ortega-Rock quarry, which, as I understand it, was an interpretation of 533, doesn't say that. It has some given in. So Clemmer is the — the site that the district court — district court cited to. Well, fine. I don't — let's just talk about what the law is, not what the district court said, okay? Okay. So the law is, as I've stated and briefed in the briefs, is that Part 2 will only apply if an exception to California's workers' compensation rule applies. CyberNet has relied on this common-law exception relating to it being outside the compensation bargain. What is important for this analysis is that every allegation CyberNet relies on, it's on page 12, 14, and 15 of his reply brief. It relates to battery against John Doe. It relates to the intentional ignoring Cameron Adams's limit sheet. It relates to them failing to require that their employees wear condoms during the shoots. All intentional acts. And under McAlean, all that is required is that the employer intend that conduct. So while CyberNet continuously tries to rely on these intentional acts in order to get the compensation bargain under Clem — under Fermino and Lee exception to apply, he's then turning around and saying that those very same allegations are not intentional. That's the argument that he's making. He's arguing out of both sides of his mouth. He's saying on one hand that it's not intentional — He's not arguing very clearly. But my understanding is that there is some room in this context, without the product's liability, between what's outside the workers' comp — coverage and what is not out — not within Exclusion 5. And that is for acts that are intentional, but not intended to — not necessarily intended to injure. Is that wrong? That is wrong. Where are you getting that from? There are no cases that — The language seems clearly to say otherwise. In a worker — When the language has been interpreted to be exactly what 533 is. In a workers' compensation policy, there is no case that provides that. And the reason for that in California — I'm sorry, Your Honor. Go ahead. The reason for that in California is that California's workers' compensation law under 3600 provides for that gap. Labor Code section 4553 in California allows an employee to enhance its workers' compensation claim for willful and serious acts by its employer. They are then entitled to have 150 percent of the benefits they would otherwise be allowed to receive. Other States do not have that language. California says without regard to negligence. Michigan, Minnesota, New Jersey, Washington, they include language in their statutes that say intentional conduct is excluded. California does not include that language. So, in fact, while he does argue this gap, Firmino does not even discuss Part 2. Lee does not even discuss Part 2. CyberNet did not point the district court and cannot point this court now to any case in the entire country on the Federal or State level that provides that these allegations are covered. And what's interesting about that is that it is based on a National Council for Compensation Insurance form. This language is used by no less than 36 States in the country, and there is not one case that has held that these allegations are covered in this gap, this illusory gap. There is not one case that holds this. Quite the opposite, there are several cases in California that provide intentional acts, battery, sexual harassment, assault, can all fall under the workers' compensation system. Torres, McAleon, Greenfield, all of those cases discuss acts that can fall outside the workers' compensation system. The way the district court did it, right? The district court did say that there were some of these causes of action that fell outside the workers' exclusion, but were within the Exclusion V because there were intentional acts, even if they — with that regard, whether they alleged an intent to injure. But you say that's wrong. Everything should have been within the workers' comp exclusion. No, Your Honor. I can see how the district court got there. I'm saying even with the benefit of the doubt that the district court gave CyberNet, there is still no coverage. I'm actually going to say, even if the district court got that part right and gave them the benefit of the doubt, let's just assume that, that I'm not a judge and jury. I can't decide what a jury would decide in regard to that. But that being said, that's not what's at issue here. Obviously, we're dealing with coverage and what the allegations say. Even if the district court gives CyberNet the benefit of the doubt, and this conduct falls outside of California's workers' compensation exclusivity rule, there are several cases that hold that the intentional act exclusion applies here and excludes this particular conduct, because whether they intended an injury or not, they committed the act, and it was intentional. But let's begin with the language of the exclusion. It's for bodily injury intentionally caused by an insurer. Doesn't that mean that they caused it intentionally, i.e., they meant to cause it? No, Your Honor. All it requires is that they intended to act. And the only the difference here — It doesn't say intended to act. It says intended to cause. Intentionally caused or aggravated by you. I'm sorry? Or aggravated by you. Oh, so what? It says intentionally caused or aggravated by you. Oh, right. So the intentionally modifies the caused or aggravated, not the act. Again, as I said, Your Honor, there are cases that have interpreted this exclusion. What cases is this? McAlean. Let me get the full cite for you here. I can find it. It is the case that the Court actually briefed in its order in support of its decision. That's fine. I mean, I — And then outside of that, too — Does the Alverton case hold that this is exactly the same as 533, that this exclusion is exactly the same as Section 533? My understanding is that it is not a workers' compensation case. But it — so what? It says that the exclusion is the same as Section 533. And if the exclusion is the same as Section 533, then we look to the cases of that 533. Your Honor, I would argue that the Court's interpretation in Clemmer, the case that the district court relied upon, is the accurate standard for 533. 533 is a different — it's an insurance code. It's different than the plain reading of the policy. So I would not agree that it's the same standard. And that's why the district saw a difference. And State Fund agrees there's a difference as well. So what is important, though, and what CyberNet mentioned was — CyberNet's counsel mentioned was something along the lines of intent doesn't matter and negligence doesn't matter. But I think you're absolutely right. He has the analysis kind of backwards, and he's a little confused to the breadth of the workers' compensation system. I'd also just like to add, and I'm not sure because CyberNet's counsel seemed to gloss over this in his reply brief, their own COO submitted a declaration attached to their summary judgment motion in the district court that — wherein he declared, under penalty of perjury, and I quote, at ER 54, I believed that Part 2 of the policy would cover injuries to CyberNet performers that were not covered by Part 1 as long as those injuries were not deliberately caused by CyberNet. So, yes, he used the word deliberate, not intentional. But that would — a person could be — they could have been negligently supervising. And that wouldn't be the deliberate that the CEO is talking about in that affidavit. Well, he said they're not covered by Part 1. Negligent supervision would be covered by Part 1. That would be a workers' compensation claim, which brings me to my next point. CyberNet continuously uses this Hollywood actor example. If Liam Neeson got injured while filming a stunt in the movie Taken, that would fall under Part 2, and there would have to be a duty to defend the director or the employer in that situation. Interesting about that is that is the very basis on which California's workers' compensation system is based. Part 1. If an employer directs their employee, a roofer, to get on the roof, it is a direction at the employer's — at the employer, for the employee to get on the roof. If the employee falls off the roof, nobody intends for the employee to fall off the roof. When he gets injured, is he entitled to civil damages? No. He's entitled to workers' compensation benefits, because in California, that's what workers' compensation benefits provide for — injuries sustained on the job without regard to negligence. He ends his answering brief with this example and says, just like here, if a Hollywood actor was injured on the job performing a stunt and the director told him to, it would be blatantly false, incorrect. He's stating Labor Code Section 3600, California's exclusive remedy rule. That's a perfect example. So, again, CyberNet's view of the breadth of the foundation upon which California's workers' compensation is founded is completely misguided. If we — if we assumed or if we went with CyberNet's interpretation, we would have thousands of cases filed in civil court daily. State fund alone gets hundreds of claims a day. If an employee is then allowed to go file a lawsuit against their employer for civil damages, that's exactly what the workers' compensation system is — was created to avoid. So, again, I would just ask that this Court affirm the district court's ruling, because that is what the law supports, that is what the case law supports, that is what the Labor Code supports, that is what public policy supports. This policy is not unconstitutional. It's an NCCI form. It is enforceable. It's not an adhesion contract. It's not illusory. And no court has ever found it to be so. Thank you. Thank you. Thank you, sir. Thank you, Your Honors. I only have a moment here. But on counsel's — I think I can tie in the Court's interest in the inherently harmful aspect of the exclusion as set out in the cases and the hypothetical thrown out there, because you may recall that in our opening brief, we referred to movies such as Zero Dark Thirty. The violence in Zero Dark Thirty is largely torture. Well, waterboarding, hanging, beating, awful — doing awful things to people in a way that's a way lot more violent than appears in any of my clients' films, as appears in lots of movies these days. There are such films all the time that go on. And, you know, one could certainly put together a theory under Fermino. If I were representing an injured actor, if I were one of the alleged terrorists in Zero Dark Thirty and the filming of the torture scene just went way too far beyond what I understood it to be, I would present a claim under Fermino v. Fedco against the producer. This is no different than that situation, and counsel's complaint is not with CyberNet but with California Supreme Court in creating this common law remedy for employees injured in those circumstances, irrespective of the intent of the producer, the director, and so forth. That's what we have here, Your Honor. That's why it falls outside the intentional injury exclusion, and I'm afraid I'm out  So I thank you very much. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Okay, the case of CyberNet Entertainment v. State Compensation. Sherman Spenge is submitted. We'll go to United States v. Williams.
judges: Gould, Berzon, Marquez